COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| | § | No. 08-08-00167-CV |
| | § | |
| | § | Appeal from the |
| IN THE MATTER OF THE ESTATE OF | § | |
| ANTONIO PEREZ, DECEASED | | Probate Court No. Two |
| | § | |
| | | of El Paso County, Texas |
| | § | |
| | | (TC# 2007-P00143) |
| | § | |
| | § | |

**O P I N I O N**

Romelia Beard, Bertha Ybarra, Graciela Ibarra, and Rosa Elena Mier ("the Daughters") appeal the trial court's judgment in favor of Rosa Perez ("Mrs. Perez") with respect to her application for probate of a will as a muniment of title. The Daughters challenge the trial court's judgment based on legal and factual insufficiency. We affirm.

Mr. Antonio Perez died on March 10, 1995. He had made two wills in his lifetime: a 1975 will and a 1993 will. Romelia Beard, Bertha Ybarra, Graciela Ibarra, and Rosa Elena Mier are Mr. Perez's adult children from his first marriage, and they were beneficiaries under the 1975 will. Mrs. Perez, the widow of Mr. Perez, was the sole beneficiary of the 1993 will.

Mrs. Perez retained attorney Fred Morton in June 2004 to probate the will in order to transfer title of a home on Grant Avenue in El Paso, Texas to her. The attorney recommended transferring the property through an affidavit of heirship and a special warranty deed. The affidavit was recorded with the County Clerk in October 2004. The attorney sent Ms. Bertha Ybarra, Mr. Perez's oldest child, a copy of the affidavit of heirship and special warranty deed for

her signature, but she did not respond. Mrs. Perez did not pursue the matter as she was unable to afford additional attorney fees.

In February 2007, the Daughters filed an application to declare heirship. Mrs. Perez responded by filing her own application to probate the 1993 will as a muniment of title. The probate court held a hearing in October 2007. Although Mrs. Perez was unable to produce the 1993 will in court, the court signed a judgment admitting that will to probate as a muniment of title in February 2008. In this order, the court determined: (1) Mr. Perez executed the 1993 will properly; (2) Mr. Perez was of sound mind and at least 18 years of age when he executed the will; (3) Mr. Perez never revoked the will; (4) the court has resolved the Daughters' contest of the will's probate; (5) all proof required for the will not produced in court has been made; (6) the photographic copy of the will was entitled to probate; (7) at the time of Mr. Perez's death, Mr. Perez owned real property on Grant Avenue and another on San Diego Avenue, both in El Paso, Texas, as well as various personal property; and (8) Mrs. Perez was not in default in failing to file a copy of the will within four years of Mr. Perez's death, and the will was admissible to probate as a muniment of title. As a result of the court's judgment, the title to both real property on Grant Avenue and San Diego Avenue rested in Mrs. Perez. On February 14, 2008, the trial court entered its order admitting the 1993 will to probate as a muniment of title after four years.[1] On March 18, 2008, the Daughters moved for a new trial, but the court denied it on April 24, 2008. The Daughters filed a request for findings of fact and conclusions of law on May 1, 2008, and at this point, more than twenty days have passed since the court's judgment.

---

[1] Although the Daughters denied knowing about the 1993 will until Mr. Morton sent them a letter regarding it, there is no dispute between the parties as to the existence of the will.

Under the Texas Rules of Civil Procedure, the Daughters failed to timely file the request, and as such, it is deemed that no such request was made. *See* TEX.R.CIV.P. 296.

On appeal, the Daughters contend the trial court erred because: (1) the evidence was legally and factually insufficient to overcome the presumption that Mr. Perez revoked the will; and (2) the evidence was legally and factually insufficient to support the trial court admitting the will to probate as a muniment of title more than four years after Mr. Perez's death.

In both issues, the Daughters challenge the legal and factual sufficiency of the evidence. However, as a preliminary matter, the Daughters contend the trial court made findings of fact in a letter ruling and order, and they urge us to review them for legal and factual sufficiency under the same standards used to review a jury's verdict on jury questions on appeal. Letter rulings, however, do not constitute formal findings of fact. *Cherokee Water Co. v. Gregg County Appraisal Dist.*, 801 S.W.2d 872, 878 (Tex. 1990); *Castillo v. August*, 248 S.W.3d 874, 880 (Tex.App.--El Paso 2008, no pet.). Here, the court sent letters to the parties on November 5 and November 7, 2007, in which it explained its rationale for its ruling. Because these letter rulings do not constitute formal findings of fact, we determine the court below did not enter any findings of fact in the instant case. *See Cherokee Water Co.*, 801 S.W.2d at 878; *Castillo*, 248 S.W.3d at 880.

Because the trial court did not make findings of fact or conclusions of law, we must assume it made all findings in support of its judgment. *Pharo v. Chambers County, Tex.*, 922 S.W.2d 945, 948 (Tex. 1996); *Alford v. Johnston*, 224 S.W.3d 291, 296 (Tex.App.--El Paso 2005, pet. denied). When a reporter's record is brought forward, these implied findings may be challenged by factual sufficiency and legal sufficiency points the same as jury findings or a trial

court's findings of fact. *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989)(per curiam); *Alford*, 224 S.W.3d at 296. In determining if some evidence supports the judgment and the implied findings of fact, we consider only that evidence most favorable to the issue and disregard entirely that which is opposed to it or contradictory in its nature. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). The judgment must be affirmed if it can be upheld on any legal theory that finds support in the evidence. *Id.*

Because the Daughters' challenge of the 1993 will on legal sufficiency grounds is based on adverse findings with respect to issues on which they did not have the burden of proof, they must demonstrate on appeal that no evidence supports each adverse finding. *See Croucher v. Croucher*, 660 S.W.2d 55, 57 (Tex. 1983). We view the evidence in the light most favorable to the trial court's findings, crediting favorable evidence if a reasonable fact finder could, and disregarding contrary evidence unless a reasonable fact finder could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). We sustain a no evidence issue only if there is no more than a mere scintilla of evidence proving the element of the claim. *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 520 (Tex. 2002).

Similarly, because the Daughters did not bear the burden of proof, in their challenge of the 1993 will based on factual sufficiency, they must show there was insufficient evidence to support the relevant adverse findings. *See Westech Eng'g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 196 (Tex.App.--Austin 1992, no writ). We consider and weigh all of the evidence and set aside the verdict only if the evidence that supports the finding is so weak as to be clearly wrong and manifestly unjust. *Long v. Long*, 196 S.W.3d 460, 464 (Tex.App.--Dallas 2006, no pet.). In making this review, we are not a fact finder and will not pass upon the

credibility of the witnesses or substitute our judgment for that of the trier of fact, even if a different answer could be reached. *Id.*; *Bright v. Addison*, 171 S.W.3d 588, 595 (Tex.App.--Dallas 2005, pet. dism'd, (2) pets. denied). The amount of evidence necessary to affirm a judgment is far less than that necessary to reverse. *Bright*, 171 S.W.3d at 595-96.

Section 85 of the Texas Probate Code provides the requirements for proving a "written will which cannot be produced in court . . . ." TEX.PROB.CODE ANN. § 85 (Vernon Supp. 2009). Such a will shall be proved in the same manner as a written will produced in court, but the proponent must show the cause of its nonproduction as well. *See id*.

A presumption of revocation arises when the will proponent does not produce the will in court, and it was last seen in the testator's possession or in a place to which he had ready access. *See Matter of Estate of Glover*, 744 S.W.2d 939, 940 (Tex. 1988). However, this presumption may be overcome by proof showing circumstances contrary to revocation, or proof that some other person fraudulently destroyed the will. *In re Estate of Capps*, 154 S.W.3d 242, 245 (Tex.App.--Texarkana 2005, no pet.). The will proponent must establish the will's nonrevocation by a preponderance of the evidence. *See* TEX.PROB.CODE ANN. § 88(b)(3) (Vernon 2003); *Huckaby v. Huckaby*, 436 S.W.2d 601, 605 (Tex.Civ.App.--Houston [1st Dist.] 1968, writ refused n.r.e.). A witness's testimony that he knew of no act of revocation by the testator may discharge the will proponent's duty to prove nonrevocation. *See Bryant v. Hamlin*, 373 S.W.2d 837, 840 (Tex.Civ.App.--Dallas 1963, writ refused n.r.e.).

At trial, Mr. Morton testified he had prepared the 1993 will for Mr. Perez, and that Mr. Perez never asked him to revoke that or to make a new will. Mrs. Perez testified that Mr. Perez put the 1993 will in a cedar chest with a lock on it in their home, and he kept the keys

to the chest. She believed that the will was in the chest up until Mr. Perez died. She testified that before his death, the keys to the chest hung in a place where anybody could access them, but after his death, the keys were put in a jewelry box, which nobody could access. She testified the Daughters visited her home a few times after Mr. Perez's death, but to her knowledge, the Daughters only took some photos from the chest before Mr. Perez's death.

Ms. Marisela Chavez Polk, Mrs. Perez's daughter and Mr. Perez's stepdaughter, testified the Daughters gathered at Mrs. Perez's home for certain holidays after Mr. Perez's death, where the cedar chest was located. She testified the Daughters opened the chest when they came to Mrs. Perez's home after Mr. Perez's death, and took some items out.

Mr. Perez's daughter, Graciela Ibarra, testified that Mr. Perez filed the 1975 will with the County Clerk because he perceived it to be an important document. She testified that the 1975 will provided Mrs. Perez could have the house on Grant Avenue or San Diego Avenue, but not both properties. The Daughters denied knowing about the 1993 will until Mr. Morton sent them a letter regarding it. The Daughters testified they only took some photos from the cedar chest, and although they visited Mrs. Perez's home a few times after Mr. Perez's death, they never entered the chest again after he died.

The Daughters argue the instant case is similar to *Mingo v. Mingo*, where the San Antonio court of appeals affirmed the trial court's denial of a will's probate based on a finding that the proponent failed to overcome the presumption that the decedent revoked the contested will. *See Mingo v. Mingo*, 507 S.W.2d 310 (Tex.Civ.App.--San Antonio 1974, writ ref'd n.r.e.).

We find *Mingo* is distinguishable to the instant case. There, the will was kept in a bank safety deposit box with strict and recorded access. *Mingo*, 507 S.W.2d at 313. Further, evidence

-6-

at trial showed that an inventory of the safety deposit box after decedent's death did not reveal any will. *Id*. In contrast, Mr. Perez's will was kept in cedar chest at home, and his family had the ability to enter this chest, and that his daughters had, in fact, taken some of Mr. Perez's personal property from the chest before and after his death. Additionally, while the decedent in *Mingo* made her will nineteen years before her death, Mr. Perez made the contested will in November 1993, less than two years before his death in March 1995. *Id*.

Viewing the evidence in the light most favorable to the trial court's findings, we find that there was more than a scintilla of evidence to support the court's determination that Mrs. Perez met her burden to overcome the presumption that Mr. Perez revoked his 1975 will. *See Wolff*, 94 S.W.3d at 520. The trial court, as the fact finder, was free to find credibility in Mrs. Perez's version of the evidence, and conclude that she met her burden. *See Long*, 196 S.W.3d at 464; *Bright*, 171 S.W.3d at 595-96. Taking all of the evidence into account, we cannot conclude the evidence supporting the trial court's determination that Mrs. Perez satisfied her burden to overcome the presumption of revocation was so weak as to be clearly wrong and manifestly unjust. *See id*. As such, the evidence was legally and factually sufficient to support the court's determination that Mr. Perez did not revoke the 1993 will. Issue One is overrruled.

In Issue Two, the Daughters contend the evidence was legally and factually insufficient to support the finding that Mrs. Perez was not in default by failing to present the 1993 will within four years of Mr. Perez's death. They argue Mrs. Perez should have offered the 1993 will for probate after her initial consultation with Mr. Morton because the consultation should have put her on notice of the problems associated with the will. The Daughters contend Mrs. Perez's testimony that she lacked funds to pay Mr. Morton was unfounded because she did not offer any

evidence regarding her specific assets, liabilities, and income. They also argue Mrs. Perez did not attempt to resolve this matter directly with the Daughters, and that her purpose in probating the will was merely to ensure Mr. Perez's property would pass on to her.

The Texas Probate Code provides: "No will shall be admitted to probate after the lapse of four years from the death of the testator unless it be shown by proof that the party applying for such probate was not in default in failing to present the same for probate within the four years aforesaid . . . ." TEX.PROB.CODE ANN. § 73(a)(Vernon 2003).

"Default" means the failure to probate a will because of the absence of reasonable diligence on the part of the party offering the instrument. *Schindler v. Schindler*, 119 S.W.3d 923, 929 (Tex.App.--Dallas 2003, pet. denied). Whether the proponent of a will is in default in not presenting the will within four years of the testator's death is ordinarily a fact question for the trial court. *Id*. The proponent has the burden to show she is not in default in presenting the will for probate within the proper time. *Id*. The proponent would not be considered in default if she did not know of the existence of the will, provided she was not negligent in failing to discover whether there was a will. *Id*.

In *Kamoos v. Woodward*, the court affirmed the trial court's judgment, which concluded the testator's wife, the will proponent, was not in default for failing to offer the will for probate as a muniment of title within four years of the testator's death. 570 S.W.2d 6, 8-9 (Tex.Civ.App.--San Antonio 1978, writ ref'd n.r.e.). The will proponent in *Kamoos* had limited financial resources and did not think it was necessary to probate the will due to the nature of the property and her resources. *Id*. Only after an oil company advised her to probate the will, did she become aware that the decedent was heir to a royalty interest, she offered the will for probate.

*Id.* The court determined this evidence was sufficient to support the trial court's finding that the will proponent was not in default and probated the will as a muniment of title. *Id.*

Similar to the will proponent in *Kamoos*, Mrs. Perez had limited financial resources: she testified that she could not afford to pay her former counsel, Mr. Morton, and she had to apply for a loan to fix some doors that were falling apart. Moreover, Mrs. Perez testified that her educational background was limited to grade school. Like the will proponent in *Kamoos*, Mrs. Perez believed it was unnecessary to probate the will; she did not know there was a time limit to probate a will. The Daughters never asked for a share of Mr. Perez's estate prior to this action. She also believed the Mr. Morton had taken care of the matter regarding the will. Similar to *Kamoos*, it was not until a third party, the Daughters, filed the petition for determination of heirship that Mrs. Perez became aware of the need to probate the 1993 will, and she did so within thirty days of the Daughters' petition. As such, the record shows there was no absence of reasonable diligence on Mrs. Perez's part in probating the 1993 will, and so she was not in default. *See Schindler*, 119 S.W.3d at 929.

Viewing the evidence in the light most favorable to the trial court's findings, there was more than a scintilla of evidence to support the court's determination that Mrs. Perez was not in default for failing to present the 1993 will for probate within four years after Mr. Perez's death. *See Wolff*, 94 S.W.3d at 520. The trial court, as the fact finder, was free to find credibility in Mrs. Perez's version of the evidence, and conclude that she was not in default for failing to probate the will within the statutory time limit. *See Long*, 196 S.W.3d at 464; *Bright*, 171 S.W.3d at 595-96. Taking all of the evidence into account, we cannot conclude the evidence supporting the trial court's determination that Mrs. Perez was not in default for failing to offer

the will for probate within four years after Mr. Perez's death was so weak as to be clearly wrong and manifestly unjust. *See Long*, 196 S.W. 3d at 464. As such, the evidence was legally and factually sufficient to support the trial court's determination that Mrs. Perez was not in default and its admission of the will to probate as a muniment of title. We overrule Issue Two.

The trial court's judgment is affirmed.

August 25, 2010

DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., Rivera, J., and Gomez, Judge
Gomez, Judge (Sitting by Assignment)